# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Anand Edke, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 21-CV-0813 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| Belden Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This is one of two proposed national class actions stemming from a breach of defendant Belden Inc.'s ("Belden") computer network (the "data breach"). Beginning in late November 2020, Belden began notifying current and former employees, their dependents, and their beneficiaries that unknown third parties gained unauthorized access to files containing their personally identifiable information, such as names, birth dates, and social security numbers. *See* Compl. ¶¶ 3–6, 26–28, ECF No. 1-1. Belden moves the court to dismiss this case on several grounds and alternatively to transfer the case to the Eastern District of Missouri, where its headquarters are located and where the other proposed class action is pending. *See* ECF No. 17. For the reasons that follow, the court transfers this case to the Eastern District of Missouri in the interest of justice. *See* 28 U.S.C. § 1404(a).

## I. Background

### A. *This Litigation (The Edke Action)*

Former Belden employee and plaintiff, Anand Edke ("Edke"), filed this class action complaint against Belden in the Circuit Court of Cook County, Illinois, on January 6, 2021, alleging claims of negligence, negligence per se, unjust enrichment, breach of implied contract, and violation of the Illinois Personal Information Protection Act, 815 Ill. Comp. Stat. §§ 530/1 *et*

*seq.*  Edke worked for Belden in Illinois from 2007–11.  Compl. ¶ 13.  He has lived in Schaumburg, Illinois, a Chicago suburb, at all relevant times.  *See id.* ¶ 12.  Edke seeks to represent a nationwide class of individuals whose personally identifiable information was compromised in the data breach as well as a subclass of Illinois residents.  Compl. ¶¶ 66–67.

Belden removed Edke's complaint to this court based on the federal diversity jurisdiction statute, 28 U.S.C. § 1332(a), and then filed its pending motion to dismiss Edke's complaint or, alternatively, to transfer this case to the district where Belden's St. Louis headquarters is located. *See* Notice of Removal ¶¶ 9–18, ECF No. 1; Mot. to Dismiss, ECF No. 17.

After reviewing the briefing on the motion to dismiss, this court ordered the parties to brief two subject matter jurisdiction questions : (1) whether Edke has Article III standing and (2) whether Edke's individual claim satisfies the $75,000 amount in controversy requirement for diversity jurisdiction.  Order entered April 12, 2021, at 2, ECF No. 27.  The court also sought the parties' views on the order in which the court should decide the pending subject matter jurisdiction, personal jurisdiction, venue, and merits questions.  *Id.* at 3.

## B. *The Mackey Action*

Kia Mackey ("Mackey") filed the other potential class action arising out of the Belden data breach ("Mackey action").  *Mackey v. Belden, Inc.*, No. 4:21-cv-149-JAR (E.D. Mo.). Mackey filed her complaint on February 4, 2021, about a month after Edke filed his complaint in Illinois state court.  *Mackey*, ECF No. 1.  Mackey subsequently amended her complaint, ECF No. 16.  Mackey brings eight claims under Missouri and Indiana law.  Like Edke, Mackey seeks to represent a national class of current and former employees, as well as their dependents and beneficiaries, impacted by the data breach.  *See id.* ¶¶ 67–76.

Belden filed a motion to dismiss Mackey's amended complaint.  Many of Belden's arguments for dismissing Mackey's complaint overlap with Belden's arguments in support of its

motion to dismiss Edke's complaint.  *See* Mot. to Dismiss 1, *Mackey*, ECF No. 18 (E.D. Mo.

Mar. 26, 2021).  As in this case, Belden's motion to dismiss Mackey's complaint has been fully

briefed.

## II.  Sequence of Issues

A court that lacks jurisdiction lacks power to decide the merits.  *See Ruhrgas AG v.*

*Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (personal jurisdiction); *Leguizamo-Medina v.*

*Gonzales*, 493 F.3d 772, 774 (7th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*,

523 U.S. 83 (1998)) (subject matter jurisdiction).  Thus, as the parties agree, subject matter and

personal jurisdiction questions must come before the merits question of whether the complaint

states a claim.  Federal courts customarily decide subject matter jurisdiction before personal

jurisdiction, "but there are circumstances in which a district court appropriately accords priority

to a personal jurisdiction inquiry."  *Ruhrgas AG*, 526 U.S. at 578, 584–85.

The parties disagree about whether venue should come before or after subject matter and

personal jurisdiction.  Edke argues that the jurisdictional questions should precede venue, citing

*Leroy v. Great Western United Corp.*, 443 U.S. 173 (1979).  ECF No. 28 at 2–3.  In *Leroy*, the

Supreme Court stated that the "question of personal jurisdiction, which goes to the court's power

to exercise control over the parties, is typically decided in advance of venue, which is primarily a

matter of choosing a convenient forum."  443 U.S. at 180 (citation omitted).

However, the Court in *Leroy* held that the typical order can be inverted: "[W]e conclude

that a court may reverse the normal order of considering personal jurisdiction and venue" where

a "sound prudential justification" exists for doing so.  *Ibid.*  In *Leroy*, avoiding an unnecessary

decision on a novel constitutional question concerning personal jurisdiction justified reaching

venue first because it was "clear that venue was improper."  *Id.* at 181.  Consistent with this

authority, the Seventh Circuit has held that a district court "is not required to determine its own

subject-matter jurisdiction before ordering the case transferred" to a different venue under § 1404(a). *In re LimitNone, LLC,* 551 F.3d 572, 575–76 (7th Cir. 2008) (per curiam); *see, e.g.*, *Kuvedina, LLC v. Pai*, 2011 WL 5403717, at *6 (N.D. Ill. Nov. 8, 2011).

As indicated in this court's briefing order, the law of Article III standing in data breach cases has evolved rapidly over the past decade, making this a relatively "complex area of standing law." ECF No. 27 at 2 (citations omitted). Relative legal complexity and novelty of a legal issue do not necessarily counsel against reaching subject matter jurisdiction first, however. "The relative ease of determining venue before subject-matter jurisdiction is an issue of judicial economy." *In re LimitNone*, 551 F.3d at 576. After weighing judicial economy, this court reaches venue first for three reasons.

First, the standing question–whether Edke has alleged injury in fact satisfying Article III's case or controversy requirement–has implications for members of the proposed classes in this case and in *Mackey*. This court and the proposed transferee court, like every federal court, must apply the same Article III standing principles. *See Steel Co.*, 523 U.S. at 89–90. If transfer is appropriate, judicial economy favors leaving the standing question for the transferee court. *See Kuvedina*, 2011 WL 5403717, at *6.

Second, Belden concedes that the transferee court has personal jurisdiction over it. *See* Mem. Supp. Mot. to Dismiss 8–9, ECF No. 18. So if transfer is appropriate, Belden's challenge to personal jurisdiction in Illinois will fall out of the case. *See Leroy*, 443 U.S. at 181. Third, the venue issue is relatively clear and straightforward. *Ibid.*

### III. Change of Venue Analysis

The change of venue statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have

consented."  28 U.S.C. § 1404(a).  The party seeking transfer bears the burden of showing that

the proposed transferee forum is "clearly more convenient."  *Coffey v. Van Dorn Iron Works*,

796 F.2d 217, 219–20 (7th Cir. 1986) (citing *C.F.T.C. v. Savage*, 611 F.2d 270, 279 (9th Cir.

1979)) (other citations omitted).  The court balances several public- and private-interest factors

when deciding whether a transfer is appropriate.  *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for

W. Dist. of Tex.*, 571 U.S. 49, 62 n.6 (2013); *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 707

(7th Cir. 2020).  When balancing these factors, the court engages in a "flexible and

individualized analysis" and "look[s] beyond a narrow or rigid set of considerations."  *In re Ryze

Claims Sols.*, 968 F.3d at 708 (citing *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,

626 F.3d 973, 978 (7th Cir. 2010)).

### A.  Convenience Factors

These appear to be completely parallel national class actions, so it can be assumed that

they will both be handled by the same court, whichever court that is.

Belden argues that the only factual connection between this case and Illinois is that Edke

resides in Illinois.  *See* Compl. ¶ 13.  Thus, continues Belden, the Eastern District of Missouri

will be more convenient for parties and witnesses because corporate decisions, presumably made

at Belden's St. Louis headquarters, concerning the handling and protection of employee-related

data, will be primarily at issue.  *See* Mem. Supp. Mot. to Dismiss 13.  Edke responds, among

other arguments, that an Illinois forum is more convenient for him, and his choice of forum

should receive substantial deference, particularly because he filed this case before the *Mackey*

action was filed.  Resp. Opp'n 10–15, ECF No. 22.

As the Seventh Circuit has explained, "When plaintiff and defendant are in different

states there is no choice of forum that will avoid imposing inconvenience" on either the plaintiff

or the defendant.  *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003) (citing

*Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 620–21 (2d Cir. 1968)).  The plaintiff's choice of forum therefore acts as a tie-breaker "when the inconvenience of the alternative venues is comparable."  *In re Nat'l Presto Indus.*, 347 F.3d at 665; *see also Rsch. Automation*, 626 F.3d at 979 & n.2 (noting that any evidence of bad faith or forum shopping is also relevant).  "But where, as here, the case involves two identical suits in distinct venues, this factor [(the plaintiff's choice of forum)] loses its significance entirely: each case has a plaintiff, and one of them will necessarily be disturbed."  *Rsch. Automation*, 626 F.3d at 979.  Edke's choice of an Illinois forum therefore receives no deference because there is no way to avoid inconveniencing one of the two plaintiffs suing Belden over the data breach.  *See id.*

Nor does the order in which the two cases were filed significantly favor either forum.  In *Research Automation*, the Seventh Circuit considered and rejected an "an inflexible [first-filed] rule" for parallel litigation.  626 F.3d at 980–82.  Instead, the order in which the two pending class actions were filed is considered "as part of the section 1404(a) transfer analysis," but the order of filing "weigh[s] no more heavily . . . than the plaintiff's choice of forum."  *Rsch. Automation*, 626 F.3d at 982.  As explained in the previous paragraph, Edke's choice of forum "loses its significance entirely" here, so the order of filing does as well.  *See id.* at 979, 982.

Furthermore, giving the order of filing controlling weight risks "encourag[ing] an unseemly race to the courthouse."  *Id.* at 980–81 (citation omitted).  The touchstone of the § 1404(a) analysis is the statutory requirements—the parties' convenience and the interest of justice.  *In re Ryze Claims Sols.*, 968 F.3d at 707–08 (citing *Atl. Marine*, 571 U.S. at 62 & n.6).  As far as this limited record shows, deferring to the order of filing here would reward the arbitrary winner of a race to the courthouse.  Both cases were filed within a month of each other and within four months of the data breach's disclosure.  No discovery has been taken in either

6

case.  And in each case, the parties are awaiting a decision on a fully briefed motion to dismiss. Hence the fact that Edke filed first does not make this court appreciably more convenient for the parties to either case.  *See Rsch. Automation*, 626 F.3d at 980–82.  For all of these reasons, the plaintiff's choice of forum and the order of filing do not significantly favor either forum.

Other convenience (also called private interest) factors courts typically consider include: (1) the availability of and access to witnesses in the two forums; (2) each party's access to witnesses and distance from resources in each forum; and (3) the location of material events and the parties' relative ease of access to sources of proof.  *Id.* at 978 (citations omitted).  Belden does little more than assert that its headquarters are located in the transferee forum to show that these factors favor transfer.  *See* Mem. Supp. Mot. to Dismiss 12–13.  The court gleans the following factual information from the limited record:

- Belden moved its headquarters from Illinois to St. Louis nearly twenty years ago, in or around 2003.  Compl. ¶ 23.

- Belden continued to hire employees who did all of their work in Cook County, Illinois, including Edke.  *See* Compl. ¶ 24.  How many employees is not stated. *See id.*

- Edke worked for Belden between 2007 and 2011.  Compl. ¶ 13.

- Belden detected the data breach on or about November 2020.  Compl. ¶ 3.

- Edke alleges that he, and presumably at least some members of the proposed class who reside in Illinois, were injured in Illinois.  Resp. Opp'n 8.

The record contains no information on the geographic distribution of members of the proposed national class in this case or in *Mackey*.  This court cannot determine how many class members and likely witnesses are within the subpoena ranges of this court and the proposed

transferee court, which is a relevant consideration when weighing the convenience to the parties. Edke would certainly be inconvenienced by travelling from the Chicago area to the Eastern District of Missouri for a deposition and court hearings.  However, Belden offers to depose him in Illinois, Mem. Supp. Mot. to Dismiss 13, which somewhat lightens the burden to him of transfer.

The court cannot assume that the district where Belden's headquarters is located is automatically more convenient for complex class action litigation.  In recent years, courts have increasingly recognized that "[w]here records are actually stored is less of a factor because documents now are easily scanned, stored, and electronically transmitted and moving them no longer creates the onerous burden it may once have imposed." *Hirst*, 405 F. Supp. 3d at 778 (quoting *Camarena v. Vanderbilt Mortg. & Fin., Inc.*, 2015 WL 4036258, at *3 (N.D. Ill. July 1, 2015)).  Belden offers no reason to think that discoverable documents cannot efficiently be produced electronically, regardless of whether this suit is litigated in Chicago or St. Louis.

The party seeking a venue transfer bears the burden to "clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would . . . include[ ]." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989). Belden is not a small company with a single geographic locus, making it unreasonable to presume that sources of proof are concentrated near Belden's headquarters. *Cf. In re Nat'l Presto Indus.*, 347 F.3d at 664.  Edke identifies several sources of proof that might not be found near Belden's headquarters in his response to the pending motion: servers (computers), information technology personnel, and vendors.  Resp. Opp'n 12.  Belden neither disputes the importance of these potential sources of proof nor specifies where they are likely located.  *See* Reply 4–7, ECF No. 23.  This is insufficient to carry Belden's burden to show clearly that the witnesses'

convenience or access to sources of proof favors transfer.  *See, e.g.*, *Hirst v. SkyWest, Inc.*, 405 F. Supp. 3d 771, 778 (N.D. Ill. 2019).  For these reasons, and in the absence of any clear showing from Belden, the private interest factors do not favor transfer to any significant degree.

### B.  Interest of Justice

Belden focuses primarily on the interest of justice factors.  "The 'interest of justice' is a separate component of a § 1404(a) transfer analysis and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey*, 726 F.2d at 220 (internal citations omitted); *accord Rsch. Automation*, 626 F.3d at 978; *see also Heller Fin.*, 883 F.2d at 1293.  The interest of justice factors include " 'docket congestion and likely speed to trial in the transferor and potential transferee forums,' 'each court's relative familiarity with the relevant law,' 'the respective desirability of resolving controversies in each locale,' and 'the relationship of each community to the controversy.' " *In re Ryze Claims Sols.*, 968 F.3d at 708 (quoting *Rsch. Automation*, 626 F.3d at 978).

Belden stresses the increased efficiency of transferring these two, very similar proposed national class actions to a single court.  The interest of justice analysis "relates to the efficient administration of the court system." *Rsch. Automation*, 626 F.3d at 978 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 626–27 (1964)).  Substantial efficiency gains can often be realized by transferring parallel, or nearly so, class actions to one district.  *See generally Van Dusen*, 376 U.S. at 644–45 (discussing the "full benefits of consolidation uniformity of result" when two similar cases are transferred to a district); *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 355–56 (7th Cir. 2017) (describing "inefficient splintering" of cases into parallel class actions as "the worst of both worlds").  Once parallel, or substantially similar, class actions are transferred to one district, they can be consolidated or coordinated.  The parties and respective courts no longer need to worry about the possibility of inconsistent rulings on legal issues and discovery,

and only one trial judge must be immersed in the pertinent facts and law.  *See Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1064 (N.D. Ill. 2015) (discussing these and other advantages of coordinating parallel class actions in a single district); *see also Galvan v. Mnuchin*, 2020 WL 8259110, at *3 (N.D. Ill. Oct. 15, 2020)  (collecting authority and discussing the undesirability of dueling parallel class actions).

The efficiencies to be gained by transferring the Edke and Mackey actions to a single forum "together weighs heavily in favor of transfer."  *Rosen*, 152 F. Supp. 3d at 1065.

The question remains, however: which forum?  Belden offers just one reason to prefer the Eastern District of Missouri: concerns regarding relative docket congestion.  Belden submits a report from the Administrative Office of the United States Courts ("AO") on the median time to trial of civil cases in the federal district courts.  ECF No. 18 Ex. B.  The report shows that for the period ending September 30, 2019, the Eastern District of Missouri's median time to trial was 34.2 months while this district's median was 36.7 months.[1]  *Id.*

Edke counters with citations to cases giving little weight to median time to trial statistics because they shed little light on the likely speed with which any particular case will be resolved. *See, e.g.*, *Lang v. Neogenomics Labs., Inc.*, 2012 WL 588963, at *2 (N.D. Ill. Feb. 22, 2012). This court shares some of the concerns expressed in the cases cited by Edke about reading too much into statistics.

On the other hand, the concept of docket congestion invites a certain amount of generalization based on how "backed up" each court is.  *Cf. Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947).  ("Administrative difficulties follow for courts when litigation is piled up in

---

1    The AO report for the period ending September 30, 2020, does not contain median time to trial data for the Eastern District of Missouri.  ECF No. 18 Ex. B.  The report shows that this district's median time to trial for the period ending September 30, 2020, was 39.3 months.  *Id.*

congested centers instead of being handled at its origin").  This court does not find statistics on median time to trial particularly helpful here, however, because the COVID-19 pandemic has disrupted hearing calendars around the country.  *See, e.g.*, N.D. Ill. Gen. Order. No. 20-0012 and amendments thereto.

Courts commonly use at least two other statistical indicators of docket congestion.  *See Campbell v. Campbell*, 262 F. Supp. 3d 701, 711–12 (N.D. Ill. 2017) (discussing differing approaches courts take to assessing docket congestion).  Some courts compare the median number of months from a case's filing to disposition.  They reason that this statistic better captures relative docket congestion because comparatively few civil cases are resolved by trial.[2]  *See, e.g.*, *AL & PO Corp. v. Am. Healthcare Cap., Inc.*, 2015 WL 738694, at *5 (N.D. Ill. Feb. 19, 2015).  Still other courts compare weighted filings per judge in the two forums along with the percentage of pending civil cases more than three years old in each district.  *See, e.g.*, *Zalutsky, Pinski & DiGiacomo, Ltd. v. Kleinman*, 747 F. Supp. 457, 463–64 (N.D. Ill. 1990); *Letter-Rite, Inc. v. Computer Talk, Inc.*, 605 F. Supp. 717, 722 (N.D. Ill. 1985).

The AO's most recent data on these measures of congestion paint a somewhat mixed picture.  The Eastern District of Missouri received 478 weighted filings per authorized judgeship in 2020 while this court received 415.[3]

---

2.  Of the 243,445 civil cases closed by the federal district courts in the one-year period ending March 31, 2020, 1,773 (0.73%) were resolved by a trial.  *Table C-5: U.S. District Courts—Median Time From Filing to Disposition of Civil Cases, by Action Taken—During the 12-Month Period Ending Mar. 31, 2020*, Federal Judicial Caseload Statistics, https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2020/03/31 (last visited July 13, 2021).

3.  *Table X-1A: U.S. District Courts—Weighted and Unweighted Filings per Authorized Judgeship—During the 12-Month Periods Ending September 30, 2019 and 2020*, Judicial Business, https://www.uscourts.gov/statistics/table/x-1a/judicial-business/2020/09/30 (last visited July 13, 2021).

On the other hand, about half the cases in the Eastern District of Missouri were civil, rather than criminal, cases while three-quarters of the weighted filings in this court were civil.[4] The result appears to be significantly greater congestion on the civil side of this court's docket relative to the proposed transferee court.  AO data for the period ending September 30, 2020, show the median time to resolution of a civil case in the transferee court to be 5.5 months; the figure is nearly twice as large for this court, 10.6 months.  ECF No. 18 Ex. B.  And 32.7% of this court's active civil cases have been pending for more than three years compared to just 4.1% of the Eastern District of Missouri's civil cases.  *Id.*  Although this court has some misgivings about placing undue weight on these figures, the foregoing statistics—particularly the numbers of long-pending civil cases and the median times to civil case closure—are pronounced enough to persuade this court that the docket congestion factor favors transfer.  *See Genocide Victims of Krajina v. L-3 Servs., Inc.*, 804 F. Supp. 2d 814, 826 (N.D. Ill. 2011) (considering size of differences in mean time to disposition when deciding whether docket congestion favored transfer).

The parties address one additional interest of justice factor: familiarity with governing law.  Edke contends that this court's greater familiarity with the Illinois Personal Information Protection Act counsels against transfer.  Resp. Opp'n 14, ECF No. 22.  But both this court and the transferee court are likely to grapple with out-of-forum law and complex choice of law issues in these proposed national class actions.  Mackey brings claims under Missouri and Indiana law, for instance.  Neither this court nor the transferee court appears to have any significantly greater familiarity with the law governing those claims.  This factor does not favor either forum. "Facing unfamiliar state law claims is business as usual in the federal courts and warrants little,

---

4.  *Ibid.*

if any, weight in assessing whether the interest of justice favors the transfer of a case to another district."  *Hirst*, *supra*, 405 F. Supp. 3d at 779–80.

Weighed in their totality, the interest of justice factors favor the Eastern District of Missouri.  In short, transfer will very likely realize significant savings of time and resources by facilitating the efficient, coordinated management of two overlapping proposed national class actions in a forum with significantly less civil docket congestion.

### IV.  Conclusion

For the reasons discussed, most of the convenience factors are neutral.  The interest of justice factors, including the obvious efficiencies of treating these parallel cases in one court, favor transfer.  Indeed, transfer will immediately eliminate the need to address personal jurisdiction in Illinois.

Accordingly, Belden's motion under 28 U.S.C. § 1404(a) to transfer this case to the United States District Court for the Eastern District of Missouri is granted.  Belden's motion to dismiss for lack of personal jurisdiction is denied as moot.  The remainder of Belden's motion to dismiss, ECF No. 17, is left for the transferee court.

Dated:  July 16, 2021                              _____/s/_____
                                                   Joan B. Gottschall
                                                   United States District Judge

13